IN THE CIRCUIT COURT OF ST. CHARLES COUNTY
STATE OF MISSOURI

| | |
|---|---|
| MARIE LIENHOP,               ) | |
| )  | |
| Plaintiff,         ) | CAUSE NO: |
| )  | |
| v.                           ) | DIVISION NO: |
| )  | |
| NSF INTERNATIONAL FOOD       ) | |
| SAFETY, LLC.,                ) | **JURY TRIAL DEMANDED** |
| )  | |
| Defendant.         ) | |
| )  | |
| Serve:                       ) | |
| Michael P. Walsh             ) | |
| Attn. Tax Department         ) | |
| 789 N Dixboro Road           ) | |
| Ann Arbor, MI 48105          ) | |

**PETITION FOR EMPLOYMENT DISCRIMINATION IN VIOLATION OF
THE MISSOURI HUMAN RIGHTS ACT, § 213.010 ET SEQ.**

Comes now Plaintiff Marie Lienhop, by and through her attorneys, and for her cause of action against Defendant NSF International Food Safety, LLC, states as follows:

**Parties, Jurisdiction, and Venue**

1. Plaintiff Marie Lienhop is, and at all relevant times has been, a citizen of St. Charles County, Missouri.

2. Defendant NSF International Food Safety is a limited liability corporation incorporated in the State of Michigan which conducts business within the State of Missouri.

3. This claim arose in St. Charles County, Missouri, where Defendant conducted business at all relevant times, employed Plaintiff, and terminated her employment.

4. Jurisdiction and venue are proper in this Court pursuant to Mo. Rev. Stat. §508.010(4) in that this claim arose in St. Charles County.

Exhibit A

1

# FACTS

5. Defendant employed Plaintiff for fourteen years, from June 2006 through November 4 2020.

6. Plaintiff was 66 years old at the time of her termination.

7. Defendant hired Plaintiff as a Field Service Representative in 2006. Thereafter, Defendant promoted Plaintiff to progressively more responsible positions, including Auditor in 2011, Senior Auditor in 2012 and Audit Team Leader in 2016.

8. Defendant employed Plaintiff as an Audit Team Leader for the last approximately 4 years of her employment.

9. Plaintiff's supervisors evaluated her performance as outstanding throughout her time as an Audit Team Leader.

10. For her 2017 Performance Review, Plaintiff's supervisor rated her overall performance as "Exceeds Requirements Regularly," noting that "Marie has a great understating of what is needed to complete her job."

11. For her 2018 Performance Review, Plaintiff's supervisor rated her overall performance as "excellent," noting Plaintiff went "above and beyond for her mentor and networking goals" and that "she does an outstanding job on expanding auditors into [Supplier Assurance Audit] programs."

12. For her 2019 Performance Review, Plaintiff's supervisor rated her as exceeds, noting Plaintiff "had another great year at NSF as an ATL [Audit Team Leader]" and that she "me[t] all of her goals." The supervisor concluded by stating Plaintiff "exceeded expectations and results beyond expectations resulted."

13. On or about April 6, 2020, Defendant furloughed the Audit Team Leaders who managed contract auditors. They were Plaintiff (66 years old), Jacalyn Oncken (65 years old), and Kiara Williams (in her 30s).

14. Upon information and belief, Audit Team Leader Eleni Demerutis (in her 30s) was on leave at the time of the furlough.

15. Before Defendant furloughed Plaintiff, she had offered to CEO Kevan Lawlor to take a temporary 25% pay-cut. Defendant did not take Plaintiff up on this offer.

16. By June 2, 2020, Defendant had recalled Audit Team Leader Kiara Williams, who is in her early 30s and approximately 30 years younger than Plaintiff.

17. Defendant, around the time it recalled Ms. Williams, failed to recall Plaintiff because of her age.

18. In August 2020, Defendant had assigned nearly half of the auditors Plaintiff supervised to Ms. Williams.

19. Plaintiff is more qualified to be an Audit Team Leader as compared to Ms. Williams. Ms. Williams, upon information and belief, had never worked as an auditor whereas Plaintiff had 23 years' experience as an auditor, including 10 years with Defendant.

20. Further at the time of her recall, Ms. Williams only had approximately six months experience working as an Audit Team Leader and, upon information and belief, had failed to take any of the courses Defendant recommended for Audit Team Leaders. In comparison, Plaintiff had approximately four years' experience as an Audit Team Leader and had taken all of the recommended courses.

21. In approximately August 2020, Eleni Demerutis returned to work as an Audit Team Leader. Ms. Demerutis is in her early 30s and approximately 30 years younger than Plaintiff.

22. Plaintiff is more qualified to be an Audit Team Leader as compared to Ms. Demerutis. Ms. Demerutis, upon information and belief, had never worked as an auditor whereas comparison Plaintiff had 23 years' experience as an auditor, including 10 years with Defendant.

23. At the time Ms. Demerutis returned to work, she only had approximately six months experience working as an Audit Team Leader and, upon information and belief, had failed to take a substantial number of the courses Defendant recommended for Audit Team Leaders. In comparison, Plaintiff had approximately four years' experience as an Audit Team Leader and had taken all of the recommended courses.

24. Notably, Defendant did not recall Plaintiff or Ms. Oncken, its two oldest furloughed employees who had significantly more experience working as Audit Team Leaders than the two individuals in their 30s Defendant chose to recall.

25. By early Summer 2020, around the time Defendant recalled the significantly younger Ms. Williams, Plaintiff began fielding phone calls from the contract auditors who had been assigned to Plaintiff before the furlough. These auditors complained that, sometimes for weeks at a time, it was very difficult to get ahold of their new assigned Audit Team Leaders (Andy Hardesty and Kiara Williams). Further, Defendant's clients were contacting the contract auditors because they too were having difficulty reaching Defendant's employees.

26. Plaintiff told her boss about the calls she received while on unpaid furlough. Mr. Hardesty encouraged Plaintiff to take these calls and keep in touch with the contract auditors in

4

an effort to encourage the contract auditors to remain with Defendant. Plaintiff did so though she was not paid or otherwise rewarded for her efforts.

27. In October 2020, Plaintiff applied for two other positions with Defendant – Senior Quality Specialist and Toxicology Coordinator.

28. Upon information and belief, Defendant hired a younger and less qualified candidate for Senior Quality Specialist.

29. Upon information and belief, Defendant hired a younger less qualified candidate for Toxicology Coordinator.

30. On or about October 6, 2020, Plaintiff asked Human Resource employee Brian Kalisher if her age was the reason that Defendant had not recalled her. Mr. Kalisher was unable to explain why less qualified individuals who were half Plaintiff's age had been recalled when she had not.

31. Less than a month later, on November 4, 2020, Defendant terminated Plaintiff's employment. She was 66 years old at the time.

32. On the same day, Defendant terminated Ms. Oncken, the other laid off Audit Team Leader who was in her 60s.

33. Defendant terminated Plaintiff because of her age.

34. In the Fall 2020, Defendant transferred Ms. Williams to a different position, leaving Plaintiff's old Audit team Leader position vacant.

35. Defendant did not offer Plaintiff the Audit Team Leader position that Ms. Williams at just vacated.

36. Instead, Defendant transferred Ann Gates (in her 30s) to fill Plaintiff's old Audit Team Leader position.

37. Plaintiff is more qualified to be an Audit Team Leader as compared to Ms. Gates. Ms. Gates, upon information and belief, had proximately 10 years' experience as an Auditor and zero experience as an Audit Team Leader where in comparison Plaintiff had 23 years' experience as an auditor, including 10 years with Defendant, and had approximately 4 years' experience as an Audit Team Leader.

38. In July 2021, Plaintiff's old Audit Team Leader (renamed Audit Manager) role again became vacant.

39. Plaintiff applied for the Audit Team Leader position in approximately July 2021.

40. Defendant hired Alma Mendoza, an outside hire, in her early 40s.

41. Plaintiff is more qualified to be an Audit Team Leader as compared to Ms. Mendoza. Ms. Mendoza, upon information and belief, had never worked for Defendant, had never worked as an Audit Team Leader, had not worked in the civilian food safety industry before, and had only worked in the food safety industry approximately 24 years. Whereas, in comparison, Plaintiff had worked for Defendant for approximately 14 years, had approximately 4 successful years' experience as an Audit Team Leader, had 22 years' experience in the civilian food safety industry, and 40 total years' experience in the industry.

42. Defendant failed to hire Plaintiff because of her age.

## COUNT I

### UNLAWFUL EMPLOYMENT PRACTICES IN VIOLATION OF THE MISSOURI HUMAN RIGHTS ACT

43. Plaintiff brings Count I under the Missouri Human Rights Act (MHRA), Section 213.010 et seq., RSMo 1986.

44. Plaintiff incorporates paragraphs 1 – 42 into Count I.

45. Plaintiff was born on January 7, 1954, and she was and is a member of a protected class under the MHRA.

46. Defendant employs six or more employees, and is, therefore, an employer within the meaning of the MHRA.

47. Plaintiff filed a timely Charge of Discrimination No. 560-2021-00449 on November 25, 2020 and a timely Charge of Discrimination No. 560-2021-02558 on September 20, 2021, both, against Defendant with the Missouri Commission on Human Rights.

48. On July 2, 2021, the Missouri Commission on Human Rights issued its Notice of Right to Sue on Charge of Discrimination No. 560-2021-00449 to Plaintiff, and she has initiated her action within ninety days thereof.

49. Plaintiff anticipates the Missouri Commission on Human Rights will issue to her a Notice of Right to Sue on Charge of Discrimination No. 560-2021-02558.

50. Defendant, by its actions and failures to act, including but not limited to those described above, terminated Plaintiff and failed to hire her because of her age in violation of the Missouri Human Rights Act.

51. Plaintiff's age was a motivating factor in Defendant's decision to terminate her employment and in its decision to not hire her.

52. As a result of Defendants' actions and failures to act as described herein, Plaintiff has suffered non-diagnosed emotional pain, suffering, humiliation, inconvenience, mental anguish and loss of enjoyment of life.

53. In addition, Plaintiff has lost income and benefits of employment and has incurred and will continue to incur attorney's fees, costs, and expenses of suit.

54. Defendant's conduct was outrageous because of its evil motive or reckless indifference to the rights of Plaintiff and, as such, warrants an award of punitive damages in such sum as will serve to punish Defendant and to deter it and others from like conduct.

WHEREFORE, Plaintiff prays that this Court will, after trial by jury, enter judgment in her favor and against Defendant, in amounts to be determined at trial, for her back pay and lost benefits, front pay, interest on back pay, compensation for non-diagnosed emotional distress, punitive damages, attorneys' fees, costs of suit, and for such other relief as justice requires.

Respectfully submitted,

SEDEY HARPER WESTHOFF, P.C.

*/s/ Jessica M. Scales*

Jessica M. Scales, #64136
Mary Anne Sedey, #26731
2711 Clifton Avenue
St. Louis, MO 63139
314-773-3566
jscales@sedeyharper.com
msedey@sedeyharper.com

Attorneys for Plaintiff